SHAWSHEEN VALLEY REGIONAL VOCATIONAL TECHNICAL SCHOOL DISTRICT SCHOOL COMMITTEE, Plaintiff,

v.

COMMONWEALTH OF MASSACHUSETTS BUREAU OF SPECIAL EDUCATION APPEALS, et al., Defendants.

No. CIV.A.02–10508–NMG.

United States District Court,
D. Massachusetts.

March 28, 2005.

Romeo G. Camba, Attorney General's, Office, Boston, for Bureau of Special Education Appeals, Defendant.

Eileen M. Hagerty, Kotin, Crabtree and Strong, LLP, Boston, for George N., Counter Claimant.

Richard F. Howard, Kotin, Crabtree & Strong, LLP, Boston, for Bureau of Special Education Appeals, Anne N, George N., Counter Claimants.

David C. Jenkins, Kopelman & Paige, PC, Boston, for Bureau of Special Education Appeals, Anne N, George N., Defendants.

Katherine Leah Kettler, Ropes & Gray LLP, Boston, for Shawsheen Valley Regional Vocational/Technical School District Committee, Counter Defendant.

David M. Mandel, Ropes & Gray LLP, Boston, for Shawsheen Valley Regional Vocational/Technical School District Committee, Counter Defendant.

Louise B. Reohr, Ropes & Gray LLP, Boston, for Shawsheen Valley Regional Vocational/Technical School District Committee, Counter Defendant.

Karen K. Storin, Ropes & Gray LLP, Boston, for Shawsheen Valley Regional Vocational/Technical School District Committee, Plaintiff.

Jill A. Updegraph, Salem, for Anne N, George N., Counter Claimants.

## MEMORANDUM & ORDER

GORTON, District Judge.

This action is before the Court for judicial review of a final decision by the Com-

monwealth of Massachusetts Bureau of Special Education Appeals ("BSEA") in its Case No. 01–0805. The BSEA awarded George N., Anne N. and Michael N. compensation from plaintiff for the its failure to provide certain special education services and to follow certain procedures relating to such services as required by the federal Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and Chapter 71B of Massachusetts General Laws and the regulations promulgated thereunder.

## I. *Background*

### A. Factual Background

Defendant Michael N. ("Michael") is currently 22 years old. Michael has been diagnosed with a language-based learning disability that impedes his auditory processing, oral and written expressive language, and organizational and self-advocacy skills. Despite his learning disability, Michael has high to average intelligence, has done remarkably well in certain areas and has been described as cooperative and a hard worker. Michael and his parents, George N. and Anne N. ("Parents") lived in Billerica, Massachusetts, during all times relevant to this dispute.

Michael attended sixth through eighth grade in the Billerica Public School system ("Billerica"). From ninth grade (1997–1998) through twelfth grade (2000–2001), Michael attended Shawsheen Valley Regional Vocational Technical High School ("the School"), at Parents' election. The School, which is operated by plaintiff, Shawsheen Valley Regional Vocational Technical School District School Committee ("Shawsheen"), is the vocational high school that serves Billerica. It operates on a ten-day cycle, with each week of academic classes followed by a week of vocational programming.

On June 4, 1995, Parents accepted an Individualized Education Plan ("IEP") that had been proposed by Billerica for Michael's seventh grade year (1995–1996) ("the seventh grade IEP"). Parents did not formally accept another IEP for Michael's eighth, ninth, tenth or the beginning of eleventh grade years, although Billerica and, later, Shawsheen, issued one or more proposed IEPs for each school year. Although Shawsheen provided various special education services for Michael, it did not provide all of the services described in the seventh grade IEP during Michael's ninth, tenth or the beginning of eleventh grade years.

On October 24, 1999, while Michael was in eleventh grade, the parties entered into a settlement agreement regarding services to be provided to Michael for the remainder of his eleventh grade year ("the Settlement Agreement"). On March 11, 2000, Parents accepted an IEP for Michael's eleventh grade year. An IEP was subsequently issued for Michael's twelfth grade year, but it was never accepted by Parents.

Details of the efforts made by Parents and Shawsheen to develop IEPs and educate Michael are set forth in the final decision issued by the BSEA ("the Decision"). For the most part, the facts of this case are not in dispute, although the parties draw vastly different inferences from those facts. The Court adopts the Hearing Officer's findings of material fact except where noted in this memorandum.

In the spring of 2001 Michael graduated from the School. Shawsheen offered to provide Michael with an extra year of instruction at Shawsheen to compensate for alleged deficiencies in his educational program but Parents declined that offer. Instead, in September, 2001, Michael began a program at Landmark College ("Landmark") in Putney, Vermont, which offers a comprehensive academic program designed for students with learning disabili-

ties.  Michael earned an Associate Degree from Landmark in May, 2004.

## B.  Claims

The parties agree that, by virtue of Michael's "stay put" rights, Shawsheen was required to implement the last applicable IEP unless and until the parties reached an agreement regarding Michael's education.  Such an agreement may be in the form of a new IEP which is accepted, a BSEA settlement agreement or other agreement between the parties.

Parents contend that Michael's seventh grade IEP was the applicable IEP for Michael's ninth, tenth and the beginning of his eleventh grade years because there was no subsequently-accepted IEP during that time period.  They allege that Shawsheen failed to provide those services and that the Parents are therefore entitled to compensation.  Parents further contend that Shawsheen failed to comply with the terms of the Settlement Agreement and the subsequently-adopted IEP, thus entitling them to additional compensation.  Parents also assert that Shawsheen failed to provide transition services or to follow certain procedures required by federal and state law relating to the provision of special education for disabled students.

Shawsheen argues that Parents agreed to accept services different from those described in the seventh grade IEP for Michael's ninth, tenth and the beginning of his eleventh grade years and that that agreement superceded the otherwise applicable seventh grade IEP. Further, Shawsheen contends that 1) it satisfied its obligations under the Settlement Agreement and the subsequently-adopted IEP, 2) any procedural violations were *de minimus* and do not support an award of compensation and 3) even if it failed to meet its obligations with respect to educating Michael, its offer of an additional year of schooling at Shawsheen fully satisfies its obligation to Michael and Parents for any such failure.  Shawsheen contends that it should not, therefore, be required to pay for Michael's education at Landmark.

█ Shawsheen and the Decision correctly note that this case does not present the issue of whether any particular IEP was appropriate for Michael.  Claims about the appropriateness of the applicable IEPs were waived when Parents elected to pursue this action without joining Billerica as a party.  Thus, Parents' contentions regarding deficiencies in the applicable IEPs are irrelevant.  Valid claims against Shawsheen, if any, must be based upon Shawsheen's failure to implement the relevant IEPs, not the adequacy of those IEPs.

## C.  Procedural History

On August 8, 2000, Parents petitioned the BSEA for a due process hearing, pursuant to M.G.L. c. 71B and the IDEA, to address Shawsheen's alleged statutory violations with respect to Michael's education.  They ultimately requested that, as compensation for its violations, Shawsheen pay for one year of tuition at Landmark College and two progress reports from the Institution for Learning and Development ("ILD").

On seven days between August 17 and October 11, 2001, the BSEA conducted intermittent hearings ("the Hearing") and on February 5, 2002, it issued the Decision.  The BSEA hearing officer ("the Hearing Officer") found that Shawsheen failed to provide some services that it should have provided to Michael in the ninth and eleventh grades and that it had failed to follow required procedures with respect to Michael's education.  As compensation, the Hearing Officer ordered that Shawsheen reimburse Parents for half of one year's tuition at Landmark and for two ILD progress reports.

Neither party is satisfied with the Decision. Shawsheen, which initiated this action on February 27, 2002, contends that the Decision is 1) based on errors of law, 2) unwarranted by the evidence, 3) arbitrary and capricious and 4) an abuse of discretion. It requests that this Court set aside the Decision. Parents contend that, to the extent the Decision was based on errors of fact or law, it was they, not Shawsheen, who were wronged thereby. They have filed a counterclaim seeking to have this Court affirm the portion of the Decision that found that Shawsheen violated Michael's rights and awarded compensation but to increase that compensation from half of one year's tuition at Landmark College to a full year's tuition. Parents brought additional counterclaims which have been dismissed. The BSEA, in turn, asks this Court to affirm the Decision in its entirety.

## II. Discussion

### A. Standard of Review

■ The IDEA provides that in actions involving appeals from administrative decisions, a federal district court

(i) shall receive the records of the administrative proceedings;

(ii) shall hear additional evidence at the request of a party; and

(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(1)(C). The requirement that the court receive the records of the administrative proceedings "carries with it the implied requirement that due weight shall be given to those proceedings," and the adoption of the preponderance of the evidence standard "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

The First Circuit Court of Appeals has interpreted the statutory language of the IDEA to require

an intermediate standard of review ... a standard which, because it is characterized by independence of judgment, requires a more critical appraisal of the agency determination than clear-error review entails, but which, nevertheless, falls well short of complete *de novo* review.

*Lenn v. Portland Sch. Comm.,* 998 F.2d 1083, 1086 (1st Cir.1993). A federal trial court,

in recognition of the expertise of the administrative agency, must consider the [agency's] findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole.

*Town of Burlington v. Dep't of Educ.,* 736 F.2d 773, 792 (1st Cir.1984), aff'd, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). It is appropriate for the court's review to be "thorough yet deferential." *Kathleen H. v. Mass. Dep't of Educ.,* 154 F.3d 8, 13 (1st Cir.1998) (*quoting Roland M. v. Concord Sch. Comm.,* 910 F.2d 983, 989 (1st Cir.1990)).

■ The agency's legal conclusions, however, are subject to *de novo* review. *Ross v. Framingham Sch. Comm.,* 44 F.Supp.2d 104, 111 (D.Mass.1999). Similarly, an agency's finding on a mixed question of fact and law cannot stand if it is based on an error of law. *Id.* at 111–12.

■ When state substantive or procedural requirements are at issue, a federal court's review is "asymmetrical." *Town of Burlington,* 736 F.2d at 792.

Where a state administrative decision rules a proposed IEP invalid because it has not met the state's substantive or procedural requirements pertaining to a free appropriate public education...a federal court should accord the findings deference [and should be] more circumspect about its intrusion.

*Id.* On the other hand, a federal court's review may be less deferential when a state agency has held an IEP to have met state standards. *Id.* Accordingly, this Court will be particularly deferential when reviewing the agency's determinations regarding Shawsheen's failure to meet its procedural and substantive obligations with respect to Michael's education.

The Federal Rules of Civil Procedure provide that summary judgment is appropriate only when there is no genuine issue as to any material fact in the case. Fed. R.Civ.P. 56. Courts have noted the "puzzling procedural problem" of deciding summary judgment motions in IDEA cases in light of the requirement that the district court give "due deference" to the findings and determination of the administrative officer. *See Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 892 (9th Cir. 1995); *Ross,* 44 F.Supp.2d at 113. In this case, however, there are no disputed questions of material fact, rendering the case appropriate for summary judgment.

### B. Substantive Violations

The relevant analysis for the alleged substantive violations in this case involves two questions: 1) what services were required to be provided? 2) Did Shawsheen actually provide those services?

Ideally, the question of what services Shawsheen was required to provide would be answered by a review of the IEP that was accepted for each school year, or if the proposed IEP for that year was rejected, a review of the IEP for the preceding year. Unfortunately, this case presents a more difficult situation because, for the most part, Parents did not formally accept or reject IEPs that were issued by Shawsheen.

Each IEP issued by Shawsheen contained a signature page which asked Parents to check a box corresponding to their response to the IEP. Options included accepting the IEP in its entirely, rejecting the IEP in its entirety, accepting the IEP, in part, and rejecting it, in part, or postponing a decision pending an independent evaluation. At least some IEPs were sent with a cover letter from Shawsheen stating, in bold, capital letters, that the signature page must be returned within 30 days. Despite Shawsheen's effort to obtain responses to the IEPs, Parents frequently failed to return the IEPs or explicitly to inform Shawsheen whether they accepted or rejected the subject IEPs.

The "stay-put" provisions of state and federal statutes and regulations provide that during the pendency of disputes regarding placement or services, eligible students shall remain in their then-current educational program unless the parents and school district agree otherwise. 20 U.S.C. § 1415(j) (providing that students shall remain in current educational program unless parties "otherwise agree"); 603 C.M.R. 28.08 (providing that students shall remain in current placement unless parties "agree otherwise"); 603 C.M.R. 28.337 (1997).

Because Parents did not accept or reject most of the issued IEPs using the suggested procedure, the Court must now decide whether they "otherwise agreed" to subsequently-issued IEPs or portions thereof.

#### 1. *Ninth Grade (1997–1998)*

■ With respect to Michael's ninth grade year, the Hearing Officer found that Parents agreed to services different from those described in the seventh grade IEP

but that the agreement was not valid because Parents "lacked the knowledge necessary to consent to alternate services." This Court agrees with the Hearing Officer's factual finding that Parents agreed to services different than those described in the seventh grade IEP. However, the conclusion that Parents lacked the knowledge necessary to consent to those services cannot stand.

Before deciding to send Michael to Shawsheen, Parents met with Thomas O'Sullivan ("O'Sullivan"), Shawsheen's Director of Special Education, to discuss Shawsheen's program and how it could serve Michael. Parents generally understood how Shawsheen differed from standard high schools and, specifically, were aware that Shawsheen operated on a 10–day schedule, with five days of academic classes followed by five days of vocational programming, and that it did not offer so-called "inclusion" classes.

Shawsheen issued a revised IEP for Michael on August 29, 1997. That was the last of several proposed IEPs that Shawsheen issued for Michael's ninth grade year. It set forth numerous classroom modifications, goals and objectives, and three specific kinds of special education services: 1) 42 minutes of English level 5, five times per 10–day cycle, 2) 42 minutes of speech therapy per 10–day cycle and 3) 42 minutes of study skills, five times per 10–day cycle.[1] Parents failed to return that IEP to Shawsheen or otherwise to inform Shawsheen that they accepted or rejected the IEP.

The record conclusively demonstrates that Parents agreed to the August 29, 1997 IEP. First, the Hearing Officer found that Parents accepted interim services that were different from those set forth in the seventh grade IEP. Although the Decision does not specify the set of services to which Parents agreed, there was no other proposed set of services to which that finding could have referred. Second, O'Sullivan testified that the August 29, 1997 IEP incorporated all of Parents' requested changes from the previously issued IEP and no other changes. Third, George N. and O'Sullivan testified that Parents did not contact Shawsheen after they received the August 29, 1997 IEP to discuss (or request changes to) it. O'Sullivan testified that between April and August, 1997, Parents regularly called him shortly after an IEP was issued if they had any problems with it. Fourth, Parents decided to send Michael to Shawsheen beginning in the Fall of 1997, having reviewed proposed IEPs from Shawsheen and with knowledge of the services Shawsheen was offering to provide for Michael. Fifth, Parents stated on numerous occasions that they were happy with the services at Shawsheen. They wrote a letter to the local newspaper commenting on how satisfied they were with the services at Shawsheen. In a letter to a Shawsheen teacher, they wrote "Michael is very happy at Shawsheen Tech. We have also been pleased with the school and its staff." In a Summary of Annual Review completed in May of Michael's ninth grade year, the Team's recommendation was "Continuation in present program to include Support Services in the following areas: Study skills/speech. Parents will pursue waiver of Phys Ed in order to pursue Option A." Parents accepted those recommendations, which indicates that they were satisfied with the implemented program.

---

1. Michael's seventh grade IEP had provided for a host of specific services, including: 1) 3.5 hours per week of daily English inclusion classes, 2) 3.75 hours per week of daily directed study, 3) 42 minutes per week of speech/language therapy, 4) 42 minutes per month of counseling, 5) various classroom modifications and 6) consultation among various participants in Michael's educational program.

Parents' acceptance of the August 27, 1997 IEP was not invalidated by any lack of knowledge or understanding with respect to their rights. Parents cannot seriously claim a lack of understanding as to how the special education system worked. They were undisputedly aware of their right to reject IEPs. They had rejected IEPs in the past for Michael and the IEPs themselves clearly indicated that Parents had a choice regarding whether to accept or reject an IEP. Parents had used services of a special education advocate in the Spring of 1992 and had consulted an education attorney. when they considered sending Michael to the School. Parents acknowledged that they received Parents Rights Brochure many times, including each time they received a proposed IEP.

Although the Parents Rights Brochure does not detail all of the nuances of state and federal special education law, it is sufficient to put Parents on notice of their rights. It states, among other things, that recipients have the right 1) to accept or reject a proposed IEP in whole or in part, 2) to request a due process mediation conducted by the BSEA whenever there is a dispute over a proposed placement or IEP and 3) to have the child remain in his then-current educational placement during the time a hearing request is pending. It also advises recipients how to obtain a list of free or low-cost attorneys and advocates and invites recipients to call the Massachusetts Department of Education if they have any questions.

Neither the Hearing Officer nor Parents, in their briefs to this Court, have cited cases that would suggest that parents are unable to consent to alternate services in a situation such as is present here.

For these reasons, the services set forth in the August 29, 1997 IEP are deemed to have been accepted by Parents and, therefore, that is the IEP which governs Michael's ninth grade year.

■ The second pertinent question with respect to Michael's ninth grade year is whether Shawsheen provided all of the services required by the August 27, 1997 IEP. Michael started the school year in English level 5, the special education course that was called for in the applicable IEP, but within a few weeks he was moved to English level 4, a regular education course, at the request of Parents. This course met five times per 10–day cycle and fulfilled the IEP's English requirement. Michael also was given speech therapy one time per 10–day cycle and study skills four times per 10–day cycle. Although the IEP called for five study skills classes per 10–day cycle, the four classes per 10–day cycle offered instead fulfilled Shawsheen's obligations with respect to study skills because, as the Hearing Officer found, Michael received study skills instruction at other times during the day. His English course included instruction on study skills and several of his teachers, including his study skills teacher, offered additional help before or after school.

Therefore, Shawsheen delivered all of the services required by the applicable IEP for the ninth grade year and no compensatory services are due for that year. Because of this conclusion, the Court declines to address Shawsheen's argument that the statute of limitations bars any award of compensatory services with respect to Michael's ninth grade year.

2. *Tenth Grade (1998–1999)*

A Team meeting was held on May 28, 1998, to address Michael's tenth grade education. The Team's recommendation for Michael was "Continuation in present program to include Support Services in the following areas: Study skills/speech. Parents will pursue waiver of Phys Ed in order to pursue Option A." Parents accepted those recommendations by signing the

Team recommendation form. The IEP developed as a result of that meeting was mailed to Parents on August 19, 1998. This IEP called for classroom modifications similar to those provided in previous IEPs as well as: 1) 42 minutes of study skills, four times per 10–day cycle and 2) 42 minutes of speech therapy, two times per 10–day cycle. It also stated that "Student will participate in regular physical education."

On October 20, 1998, Parents sent Shawsheen a letter which requested numerous changes to the IEP and stated that Parents "believe that the above changes will make the Ed Plan acceptable." The changes requested by Parents included modifications to the student performance profile, objectives and particular skills to be taught. Parents asked that Michael have a liaison to consult with his teachers and to monitor his progress, especially in English and algebra. Parents also requested that consultation time be added to the IEP in order for Michael to work on self-advocacy with a speech/language therapist. Shawsheen subsequently issued a revised IEP which called for 15 minutes per 10–day cycle of consultation with M. Piscitelli to begin in October, 1998.[2]

Parents did not formally accept or reject the August 19, 1998 IEP or the October, 1998 IEP modification. Nonetheless, they are deemed to have accepted either 1) the August 19, 1998 IEP as modified by the changes they requested in their October 20, 1998 letter or 2) the October, 1998 IEP, if it complied with Parents' requests.[3] Parents' letter, which stated that

the requested changes would make the IEP acceptable, together with their failure to reject the subsequently-issued IEP or to request further changes, operates as acceptance of the IEP as modified by their changes.

The Hearing Officer found that in tenth grade Michael received study skills instruction four times per 10–day cycle and speech therapy two times per 10–day cycle. She made no findings relating to the classroom modifications required by the IEP and Parents have not claimed that the classroom modifications were inadequate. Thus, all of the required special education services were provided.

Parents have not claimed, nor is there evidence to suggest, that Shawsheen or Ms. Piscitelli failed to provide the required consultation services of 15 minutes per 10–day cycle. Furthermore, Ms. Fox, Michael's study skills teacher, provided some consultation services, including advocating for Michael to get extra help and tutoring in algebra.

Therefore, the tenth grade services provided to Michael satisfied the applicable IEP and no compensation is due for that year.

3. *Eleventh Grade, Pre–Settlement Agreement (Fall 1999)*

On June 24, 1999, a Team meeting was held to consider Michael's eleventh grade educational program. The resulting IEP was issued on September 8, 1999. It called for the same special education services as did the previous year's IEPs: 1)

2. The complete IEP that was issued following Parents' October 20, 1998 letter is not in the record. The record contains only one page from that IEP and it is in the middle of a previously-issued IEP.

3. The Record does not contain the October, 1998 IEP. If that IEP contained all of the

changes Parents requested in their letter, that IEP governs. If it did not, the August 19, 1998 IEP, as modified by Parents' requested changes, controls. In any event, the controlling IEP required four study skills classes per 10–day cycle, two speech therapy sessions per 10–day cycle and consultation for 15 minutes per week.

42 minutes of study skills, four times per 10-day cycle and 2) 42 minutes of speech therapy, two times per 10-day cycle. It did not call for consultation services. Moreover, it stated that Michael would participate in regular physical education.

On September 20, 1999, Parents formally rejected the September 8, 1999 IEP by checking the box stating that they rejected the IEP in full. Accordingly, the IEP that was in force for Michael's tenth grade year continued to be in force for the beginning of Michael's eleventh grade year. That IEP called for: 1) 42 minutes of study skills, four times per 10-day cycle, 2) 42 minutes of speech therapy, two times per 10-day cycle and 3) consultation services. It remained in effect from September, 1999 to October 25, 1999, when a Settlement Agreement was reached.

Shawsheen proposed that Michael's eleventh grade course selection include Option B history, a course which met four periods per 10-day cycle, and study skills four times per 10-day cycle. Parents and Michael, however, wanted Michael instead to take Option A history, a course which met eight periods per 10-day cycle. Both history courses cover the same material but Option A history covers the material in one year while Option B, meeting only one-half as often, takes two years to complete. Because Michael's schedule contained no free periods, enrolling in Option A history necessarily involved his dropping other classes in order to free up four periods per 10-day cycle.

Parents wanted Michael to drop physical education in order to make room for Option A history. Shawsheen contacted a liaison from the Department of Special Education but was advised that a student in Michael's position could not waive the physical education course. Shawsheen notes that M.G.L. c. 71, § 3 mandates that physical education be taught as a required course in all grades for all students in the public school system. However, Shawsheen was permitted to allow Michael to drop the study skills classes to make room for Option A history and thus offered the choice of either Option B history and study skills classes or Option A history with no study skills classes. Parents chose the latter option, knowing that it would involve the elimination of Michael's study skills classes. This choice operated as a waiver of Michael's right to the study skills classes as long as he was enrolled in Option A history.

Parents chose a course of study which precluded Michael from taking advantage of the study skills classes to which the applicable IEP entitled him. They cannot recover for Shawsheen's failure to deliver those services. Holding Shawsheen liable for such a choice would create a perverse incentive for schools to treat IEPs (even rejected or hold-over IEPs) as absolutely binding and to require students to take all of the classes set forth in them, even if the student and/or parents make an informed decision to choose other services instead.

The applicable IEP also required that Shawsheen provide two periods of speech therapy per 10-day cycle. Shawsheen's speech therapist resigned in the summer of 1999 and was not replaced until January, 2000, and Shawsheen did not provide speech therapy to Michael from the beginning of his eleventh grade year until after the October 25, 1999 Settlement Agreement was reached. However, Shawsheen offered to (and did) compensate Michael for that deficiency by paying for speech and language services provided by ILD to Michael during the summer of 2000. This was sufficient to discharge Shawsheen's obligation to provide the speech therapy sessions required by the applicable IEP from September through October 25, 1999.

Consultation services, as set forth in the IEP for Michael's tenth grade year, were

required from the beginning of that school year. Parents have not argued that the consultation services were not provided during that period or that they were deficient.

Therefore, Shawsheen met the requirements of the applicable IEP from the time Michael entered eleventh grade until October 25, 1999, and compensatory services for that time period are not warranted.

### 4. Eleventh Grade, Post–Settlement Agreement (1999–2000)

On October 25, 1999, the parties entered into a Settlement Agreement. The Settlement Agreement called for Michael's current schedule to be modified to provide for: 1) the elimination of physical education classes, 2) speech and language tutoring for one period per 10–day cycle (in lieu of one physical education class), 3) tutoring in other content areas for three periods per 10–day cycle (in lieu of three physical education classes), 4) speech and language tutoring for one period per week during the weeks of vocational programming and 5) additional tutoring after school as needed. The Settlement Agreement further provided that Michael would continue to attend two one-hour ILD sessions per week, as he had been doing at Parents' expense, but that Shawsheen would cover the cost of such future services. The Settlement Agreement also provided that

in connection with Student's attendance at the School and ILD, the School's special education liaison shall consult with Ms. Bethany Roditi of ILD between Monday and Thursday on a weekly basis.

A meeting was held on November 22, 1999, to discuss the implementation of the Settlement Agreement. Shawsheen attributes the one-month delay in the scheduling of that meeting to the fact that O'Sullivan suffered a heart attack in early

November, 1999, which disabled him for the remainder of that school year and rendered him unable to participate in the implementation of the Settlement Agreement. At the November 22, 1999 meeting, Paula Blanchette was appointed as the liaison to consult with Roditi regarding Michael's progress.

An IEP was subsequently issued to comply with the terms of the Settlement Agreement. It was accepted in full by Parents on March 1, 2000. The Settlement Agreement sets forth the services required from October 25, 1999 until the end of Michael's eleventh grade year. The new IEP supplemented, but did not replace, the Settlement Agreement.

■ The major dispute regarding Shawsheen's compliance with the Settlement Agreement involves the consultation between Shawsheen and ILD. Parents argue that Shawsheen failed to comply with the requirement for consultation while Shawsheen contends that it provided all the consultation that was required. The Hearing Officer, siding with Parents, found that Shawsheen did not fulfill its responsibilities relating to consultation. She found that the parties understood that the liaison would communicate with ILD on a weekly basis to coordinate support and communication between Michael, Parents and staff and that Parents wanted a tightly coordinated educational program for Michael. Even accepting as true those statements of the parties' understanding and goals, the record does not support a finding that Shawsheen failed to fulfill its responsibilities regarding consultation.

Mr. Monagle, Shawsheen's administrator, instructed his staff to communicate with ILD staff about Michael's progress. Ms. Blanchette spoke with Michael's teachers at least once each week and spoke with his ILD tutors "frequently". She communicated with them in person, by phone and

by e-mail. Blanchette testified that she attempted to contact Michael's ILD tutors each academic week although she did not necessarily get in touch with them every week. Blanchette did not communicate with Michael's tutors or teachers during school vacation weeks or when she was out of work due to family situations.

Blanchette asked Michael's teachers at Shawsheen about what and how Michael was doing and whether they had any concerns. Although initially Blanchette did not understand exactly what communication or coordination was required, she understood that her role with respect to ILD was

> to keep them [ILD] informed of any information we [the School] had, and that they were to keep me informed of how Michael was doing, that we were the primary educational system, that they were the secondary educational system, and that there should be some communication back and forth [and that she] asked the people from ILD, how can I help you? What it is that you would like from me? And then eventually, some people said, well, I'd like a list of assignments, I'd like to know what he's doing in math, I'd like to know what he's doing—and then I provided that information.

(Administrative Record 697, 698.)

Although Parents emphasize aspects of coordination that could have been better, the Settlement Agreement did not require flawless communication and coordination. The terms of the Settlement Agreement must be interpreted with a degree of reasonableness and it would be unreasonable to find the requirement of weekly communication unsatisfied if the liaison made weekly attempts at communication but that those attempts failed due to the unresponsiveness of the ILD representative. Such a result, if it occurred, was outside of Shawsheen's control and Shawsheen can-

not be faulted for it as long as the liaison made her best efforts to communicate weekly. It is true that some phone calls went unreturned, some of Michael's teachers did not have the time or desire to communicate with his tutors, the liaison was occasionally away from work due to school vacations or family situations, and that it took a while for the liaison, teachers and tutors to work out a mutually satisfactory system of coordination and communication. Such shortcomings are likely to arise, however, when, as here, a group of people, many of whom do not know each other, are instructed to communicate. Shawsheen cannot be held liable for human foibles that made communications between the liaison, teachers and tutors less than perfect. Considering the totality of the circumstances, the coordination provided by Blanchette and Shawsheen fulfilled its responsibility for having a liaison consult with ILD regarding Michael's performance.

The Hearing Officer found, and the record shows, that Shawsheen fulfilled the remaining provisions of the Settlement Agreement for Michael's eleventh grade year. Shawsheen allowed Michael to drop his physical education course, provided the required tutoring during the school day and after school and funded two hours of ILD tutoring per week. Although Shawsheen did not provide speech and language services until December 18, 1999, it paid for services provided by ILD to Michael during the summer of 2000, thus fully compensating him for the deficiency relating to services prior to December 18, 1999.

Therefore, Shawsheen fulfilled its responsibilities as set forth in the Settlement Agreement and the eleventh grade IEP for the second part of Michael's eleventh grade year and no compensatory services are warranted for that time period.

### 5. *Twelfth Grade (2000–2001)*

On June 22, 2000, a Team met to discuss Michael's twelfth grade IEP. An IEP developed as a result of that meeting was mailed to Parents on July 6, 2000 and was rejected by Parents on July 17, 2000. A revised IEP was sent to Parents on February 16, 2001, which called for special education services in the form of: 1) one hour of speech/language consultation per 10–day cycle, 2) 42 minutes of speech/language instruction, four times per 10–day cycle and 3) 50 minutes of ILD tutoring, four times per 10–day cycle. Parents did not formally accept or reject that IEP. In the absence of evidence of Parents' agreement to the February 16, 2001 IEP, the provision of services for Michael in twelfth grade is governed by the Settlement Agreement and the eleventh grade IEP.

As the Hearing Officer found, Shawsheen provided all of the services required by Michael's eleventh grade IEP and the Settlement Agreement during Michael's twelfth grade year. Shawsheen provided three study skills classes after school per 10–day cycle and two study skills classes per 10–day cycle which were provided by ILD but funded by Shawsheen. The communication and coordination between the liaison, teachers and ILD tutors was similar to or better than that of the previous year. Parents do not dispute the Hearing Officer's determination that the services provided to Michael in his twelfth grade year met the substantive requirements of the Settlement Agreement and the eleventh grade IEP. Therefore, no compensatory services are due for Michael's twelfth grade year.

### 6. *Transition Services*

Parents claim that Shawsheen failed to provide the transition services needed to prepare Michael to meet his goal of attending college. As the Hearing Officer found, that claim is without merit because Michael graduated from Shawsheen and did, in fact, enter college. He took some college preparatory courses, graduated in the top 35% of his high school class, scored well on the SAT exam and was qualified to attend Dean College, Curry College and several state colleges. Because Shawsheen provided adequate transition services for Michael, an award of compensatory services for alleged deficiencies relating to transition services is not warranted.

### C. Procedural Violations

Parents allege that Shawsheen committed numerous and flagrant procedural violations with respect to Michael's education and that those violations entitle them to an award of compensatory damages. The Hearing Officer found that Shawsheen committed procedural violations of IDEA and the state special education laws.

The procedural safeguards set forth in the special education statutes are not to be disregarded. The United States Supreme Court has stated that the importance Congress attaches to procedural safeguards in the IDEA "cannot be gainsaid." *Rowley*, 458 U.S. at 205, 102 S.Ct. 3034. The procedural safeguards emphasize "full participation of concerned parties throughout the development of the IEP." *Id.* at 206, 102 S.Ct. 3034.

■ However, the First Circuit Court of Appeals has unambiguously held that, while substantive violations of the IDEA may give rise to a claim for compensatory relief, "compensatory education is not an appropriate remedy for a purely procedural violation of the IDEA." *Maine Sch. Admin. Dist. No. 35 v. Mr. R.*, 321 F.3d 9, 19 (2003). Because Shawsheen provided the services to Michael that were required under the applicable IEPs, it did not substantively violate the IDEA. Therefore, compensatory relief will not be awarded for any procedural violations in this case.

The Court notes that even if relief for purely procedural violations of the IDEA were authorized, a review of the totality of circumstances in this case leads to the conclusion that an award of damages would not be equitable. All of the procedural violations were *de minimus* and Parents concede in their responsive brief that violations must be more than *de minimus* to warrant a compensatory remedy. Parents were very involved in Michael's education, frequently talking with school administrators and teachers and making educational decisions for Michael. They were tireless advocates on his behalf and had ample opportunity to participate in the design of his educational program. Shawsheen representatives listened and responded to their concerns and provided Michael with an educational program that was tailored to his strengths and his learning disabilities and prepared him to enter college. A review of the list of procedural violations found by the Hearing Officer demonstrates that they were either not actual violations or were *de minimus* in nature.

### D. ILD Reports

To the extent Parents request reimbursement for the cost of two ILD reports as compensation for any substantive or procedural failure by Shawsheen, it need not pay such compensation because, as explained above, compensatory services are not warranted in this case. Parents have not identified any other statutory basis for such an award and this Court is aware of none.

### E. Implementation

Parents request relief for Shawsheen's failure to implement the Decision, by reimbursing them for Michael's tuition at Landmark College, pending final resolution of the matter on appeal. Parents cite no legal authority for their request and the relief is unwarranted. Although 34 C.F.R. § 300.514(c) requires interim compliance with a BSEA award if the BSEA agrees with Parents that a change of placement is appropriate, the Decision in this case did not involve a change of placement but, rather, compensation in the form of monetary reimbursement. Reimbursement pending this Court's review of the Decision was not required and Parents are not entitled to further compensation for Shawsheen's failure to reimburse them immediately.

### III. *Conclusion*

Throughout Michael's schooling at Shawsheen, administrators, teachers and Parents worked to develop appropriate IEPs for Michael and to deliver those services in order to give Michael the education to which he was entitled. Shawsheen provided all of the services that were required by the applicable IEPs. Although Parents point to some procedural violations, they were not substantive. They were, instead, *de minimus*. Parents are not entitled to compensatory damages for any alleged deficiencies with respect to the providing of an education for Michael. Therefore, the Decision of the BSEA is reversed.

### ORDER

In accordance with the foregoing memorandum:

1) Motion of Plaintiffs–in–Counterclaim George N. and Anne N. for Summary Judgment (Docket No. 77) is **DENIED**;

2) Plaintiff Shawsheen Valley Regional Vocational/Technical School District School Committee's Motion for Summary Judgment (Docket No. 83) is **ALLOWED**; and

3) the case is **DISMISSED**.

**So ordered.**